# FOR PUBLICATION



FILED & ENTERED

APR 03 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY harris    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>IRAJ MAQSOUDI<br><br><br><br>Debtor. | Case No.: 6:13-bk-26429-MH<br><br>Chapter 7<br><br>**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES**<br><br>Hearing:<br>Date:    March 29, 2017<br>Time:    11:00 a.m.<br>Courtroom:    303 |

### I.    BACKGROUND

On October 3, 2013, Iraj Maqsoudi ("Debtor") filed a Chapter 7 voluntary petition. On January 4, 2014, Debtor received a discharge.

On January 21, 2014, Trustee commenced an adversary proceeding against Mandana Banihashem ("Defendant"). On January 30, 2014, Trustee commenced an adversary proceeding against Debtor. The complaints involved the undisclosed transfer of real property by Debtor to Defendant within one year of the petition date. The adversary proceeding against Defendant resulted in the avoidance of the transfer and the recovery of the real property by Trustee.

On February 9, 2016, Trustee filed a motion to sell the property and an order approving the sale was entered on March 22, 2016. On April 8, 2016, Mustafa Mayar ("Mayar"), Michael Berger's ("Applicant") client, received partial payment of $210,000 from the proceeds of the sale.

On February 2, 2017, Applicant filed a motion for payment of administrative expenses. On February 24, 2017, Trustee filed comments, recommending granting of the motion. The Court held a hearing on the matter on March 8, 2017, at which time the hearing was continued for additional briefing. On March 17, 2017, Applicant filed a brief. On March 29, 2017, the Court held a continued hearing on the matter, at which time the Court orally granted the motion, allowing a significantly reduced administrative claim.

## II.    DISCUSSION

### A.  Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1409(a).

### B.  Administrative Expense under 11 U.S.C. § 503(b)

11 U.S.C. § 503(b)(4) (2005) states:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
>> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant

11 U.S.C. § 503(b)(3)(B), (D) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
>> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
>>
>>> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under Chapter 9 or 11 of this title

In order for Applicant to be entitled to an administrative claim for his reasonable compensation under § 503(b)(4), Mayar must be an "entity whose expense is allowable" under § 503(b)(3). Section 503(b)(3)(A), (C), and (E) are inapplicable in the present case because they deal with involuntary petitions, prosecution of criminal offenses, and custodians, respectively. That leaves § 503(b)(3)(B) and (D).

Section 503(b)(3)(B) requires that creditor obtain court approval, and then subsequently recover certain property for the benefit of the estate. Here, Mayar did not recover any property. The Trustee maintained the adversary proceeding against Defendant that led to the recovery of property. *See e.g.*, *In re Autosport Int'l. Inc.*, 2013 WL 3199826 (Bankr. C.D. Cal. 2013) (providing an example of a situation in which a creditor recovered property); *see also In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005). Furthermore, the creditor must obtain prior court approval for its efforts to recover property in order to maintain a claim under § 503(b)(3)(B). *See, e.g.*, *In re Maximus Computers*, 278 B.R. 189, 197 (B.A.P. 9th Cir. 2002) ("Section 503(b)(3)(B) carries forward the long-settled authority under former Bankruptcy Act § 64(a)(1) for creditors to sue in the name of the trustee to recover property for the benefit of the estate and to be compensated as administrated expenses."). Therefore, when the creditor is not the party maintaining the adversary proceeding, but is merely providing important assistance to the Trustee, that creditor is forced to rely on § 503(b)(3)(D). Section 503(b)(3)(D), however, only applies to cases under Chapter 9 or 11 and cannot be utilized in a Chapter 7 case. *See In re United Educ. & Software*, 2005 WL 6960237 at *9 (B.A.P. 9th Cir. 2005) ("While § 503(b)(3) acknowledges the substantial contributions of creditors to a chapter 9 or 11 bankruptcy estate, even an equitable approach cannot vary its plain meaning in order to allow such priority for services rendered in a chapter 7 case.").

Applicant's brief, in essence, contends that it would be proper for the Court to approve his request for an administrative expense outside the framework of § 503(b)(3)(B) or (D).[1] Applicant relies on the language of § 503(b), which uses the word "including," to make an argument that the enumerated administrative expense categories are not exhaustive. Applicant refers to a Sixth Circuit case, *In re Connolly N. Am., LLC*, 802 F.3d 810 (6th Cir. 2015), which supports his argument and which held that § 503(b)(3)(D) did not preclude the bankruptcy court from awarding an administrative expense to a creditor that made a substantial contribution in a Chapter 7 case.

In order for Applicant's argument to prevail, the Court must conclude that the reasoning of the Sixth Circuit is persuasive, and that the facts of this case warrant allowance of an administrative expense outside the enumerated categories. For the reasons stated below, the Court adopts the legal position of Applicant, and concludes that the situation warrants the allowance of an administrative claim. The Court notes, however, that the Sixth Circuit opinion was a split decision and admitted that its interpretation created a circuit split on the issue. *Id*. at 819, n.8. By the dissent's count, 86% of bankruptcy or district courts had denied an administrative expense

---

[1] While Applicant's brief begins by stating "11 U.S.C. § 503(b)(3)(D) can be utilized in Chapter 7 cases," that statement does not accurately reflect the argument made.

for substantial contributions in a Chapter 7 case, while only 14% had reached the conclusion of the Sixth Circuit.

Additionally, the Ninth Circuit BAP reached the opposite conclusion of the Sixth Circuit in *In re United Educ. & Software*, 2005 WL 6960237 (B.A.P. 9th Cir. 2005) ("Section 503(b) has been construed narrowly because administrative claims are paid directly from the bankruptcy estate and reduce the funds available for creditors and other claimants."). In that case, the BAP interpreted the word "including" to mean that the nine subsections of § 503(b) were non-exhaustive, but that the six examples of § 503(b)(3), which does not use the word including, were not non-exhaustive. *Id*. at *7 ("Therefore, unlike the six enumerated subsections under § 503(b), in which the use of the word 'include' is significant for being nonexhaustive, the five examples under § 503(b)(3) are restricted to only those five."). This interpretation appears illogical. The statute's construction, when section 503(b), subsection 503(b)(3), and subsections 503(b)(3)(A)-(F) are read as one coherent sentence, should not be read to limited subsections 503(b)(3)(A)-(F). To illustrate, removing the statute's formatting results in the following sentence (italics utilized to indicate the different clauses):

> *After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including* the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by *a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title*.

It is grammatically improper to conclude that the earlier italicized text only corresponds to the non-italicized text, but does not impact the later italicized text. Furthermore, concluding that the subsections of § 503(b) are non-exhaustive, but that the subsections of 503(b)(3) are exhaustive, would make the application of the statute to situations outside its plain language untenable. What determines which level of the statute an applicant's request should be analyzed under? If the subsections of § 503(b)(3) cannot be expanded to include the request, what prevents the applicant from requesting the expansion of the subsections of § 503(b) to allow the request? For instance, in this case, the text of § 503(b)(4), a subsection of § 503(b), and, therefore, nonexhaustive under the Ninth Circuit BAP's interpretation, could simply be expanded to relax the limiting conditions to allow this administrative claim.

The Ninth Circuit BAP appears to have utilized the doctrine of *expressio unius est exclusion alterius*, "under which a court infers an intention to restrict the statute's application to the specific listed examples," in support of its interpretation." *Id*. at *7. In other words, because § 503(b)(3) and (4) specifically address the type of claim that Applicant possesses here, it can be inferred that Congress contemplated this situation, and made a conscious determination to distinguish between Chapter 7, on one hand, and Chapter 9 and 11, on the other hand. *In re Connolly N. A., LLC* specifically contemplated the tension between *expression unius est exclusion alterius* and the selection of the word "including":

> The question, therefore, is whether the inclusion of the 'substantial contribution in a case *under chapter 9 and 11*' language in subsection (b)(3)(D) negates the meaning of 'including' in the introductory provision of § 503(b) and divests bankruptcy courts of the

> authority to allow reimbursement of administrative expenses incurred by a Chapter 7 creditor who makes a substantial contribution to the debtor's estate.

802 F.3d at 816.

In support of its use of this doctrine in reaching the opposite conclusion, the Ninth Circuit BAP relied on a Ninth Circuit case, *In re Mark Anthony Constr., Inc.*, 886 F.2d 1101 (9th Cir. 1989). *In re United Educ. & Software*, 2005 WL at *7. *In re Mark Anthony Constr., Inc.* rejected, however, the very same reading for which the Ninth Circuit BAP cites it as support:

> The text of section 503 immediately presents two seemingly contradictory aspects. The resolution of this apparent contradiction is central to our conclusion. On the one hand, the section lists a series of expenses which should be treated as first priority administrative expenses. When a statute sets forth a series of items included under a general rule, the canon of *expression unius est exclusion alterius*, under which a court infers an intention to make the statute's application restricted and limits the application of the statute to the specific listed examples, is often deemed applicable.

> On the other hand, the structure of section 503(b) is inconsistent with a restrictive interpretation of its list of administrative expenses; the statute states that "there shall be allowed administrative expenses, . . . *including*-" and then lists (in subsections (1)-(5)) a series of expenses. In construing a statute, the use of a form of the word "include" is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items. In fact, at least one court has relied upon this interpretation of "including" to conclude that post-petition interest should properly be given first priority as an administrative expense.

> The Bankruptcy Code specifically provides that "including" is not a limiting term when used in the Code. Especially in light of this unambiguous general directive, we conclude that the administrative expense statute's use of "including" renders the *expression unius* rule inapplicable to section 503.

886 F.2d at 1106 (citations and footnote omitted).

The Ninth Circuit opinion is binding law in this Court. For the reasons outlined above, the Court concludes that the Ninth Circuit BAP's narrowing of the excerpt presents grammatical and logical problems, and is not supported by the excerpt's reasoning. In a situation, such as here, where a creditor has made a substantial contribution to a Chapter 7 case, the Bankruptcy Court has discretion to allow an administrative expense in accordance with the equities of the case. Here, Applicant substantially assisted the Trustee in successfully maintaining an adversary proceeding that resulted in the recovery and sale of property which produced a surplus estate.

### C.  Services Performed to Benefit Estate

The Court will, however, reduce the amount of the allowed administrative claim to reflect only those services which were performed for the estate's benefit. Summarily, the Court concludes that the services related to the acquiring of a title report, the attendance at depositions, and the preparation for and conduction of the 2004 examination, could reasonably be considered services performed for the estate. On the other hand, opposing the motion to convert, attendance at status conferences, and activities generally related to the Creditor's claim were not performed for the benefit of the estate, but were, instead, for the benefit of Mayar. The Court is inclined to decrease the administrative claim to reflect the allowed entries below[2]:

a) Send an email to Wes Avery re insurance (3/5/14) $35
b) Receive and review an updated property title report and forward copy to Wes Avery (7/11/14) ($175)
c) Communicate with Wes Avery regarding a purchase of the Magnolia property that is subject of the pending adversary proceeding (8/5/14) $35
d) Telephone conference with Wes Avery re taking the 2004 exam of the debtor (9/2/14) $39
e) Review the interrogatories and request for production of documents submitted by West Avery to Defendant (10/3/14) $70
f) Attend Deposition of M. Banihashem (11/17/14) $1400
g) Attend Iraj Maqsoudi's deposition (12/12/14) $1400
h) Draft the motion for 2004 examination (3/4/15) $1750
i) Make final revisions to motion for 2004 examination (3/6/15) $350
j) Legal research to confirm that a 2004 exam is proper in this case (3/9/15) $198
k) Draft POS for the 2004 Exam Motion (3/9/15) $20
l) Draft Non opposition declaration and Order Granting 2004 Exam (3/26/15) $100
m) Prepare for tomorrow's 2004 Examination of Iraj Maqsoudi (3/30/15) $875
n) Conduct a 2004 examination of Iraj Maqsoudi at our Riverside office (3/31/15) $1925

### III.    CONCLUSION

In accordance with the above, the Court will allow an administrative expense in the reduced amount of $8,372 for attorney's fees. The Court will also allow an administrative expense in the reduced amount of $109.02 for expenses related to the activities listed above. Therefore, the total allowed administrative expense will be $8,491.02. IT IS SO ORDERED.

###

Date: April 3, 2017

Mark Houle
United States Bankruptcy Judge

---

[2] For the sake of space, the description of the service perf